# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| EMORY WHITE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | CV415-181 |
| ) | CR414-332 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **REPORT AND RECOMMENDATION**

Guilty-plea convicted of conspiracy to commit food stamp fraud, Emory White seeks 28 U.S.C. § 2255 relief. Doc. 1[1] (information); docs. 7, 8 & 14 (waiver of indictment and plea agreement); doc. 16 (judgment ordering 60 months' imprisonment and restitution in the amount of $899,971.20); *see* doc. 19 at 8-14 (stating he was merely an employee following the marching orders of an "unethical boss" and should not have been subjected to such a harsh sentence).

## A. BACKGROUND

White was indicted for conspiring, along with 53 codefendants, to purchase illegally more than $19 million in benefits from the

---

[1] The Court is citing to the criminal docket in CR414-332 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

Supplemental Nutrition Assistance Program (SNAP) and the Georgia Women, Infants, and Children (WIC) program for cash. He was charged with conspiring to use interstate wire communications to execute a fraudulent scheme in violation of 18 U.S.C. § 1349, and conspiring to launder money in violation of 18 U.S.C. § 1956. Doc. 3. Both counts carried with them potential 20-year sentences. *Id.* Upon the advice of counsel, movant waived the indictment and pled guilty to one count of conspiracy to commit mail fraud, wire fraud, and money laundering in violation of 18 U.S.C. § 371. Docs. 8 & 14.

At the plea hearing, White admitted that as an employee of Wayne Jackson he purchased WIC vouchers for cash at two separate stores. Doc. 23 at 27; *see also* PSR ¶ 25. Based on his lengthy criminal history, movant's total offense level was set at 35 with a criminal history category of VI, fetching an advisory guideline range of 292 to 365 months' imprisonment. PSR ¶¶ 28-40, 54, 87. Pursuant to the negotiated plea agreement, however, the maximum penalty and guideline range of punishment was *capped* at 60 months' incarceration, the statutory maximum for a violation of 18 U.S.C. § 371. *Id.* at ¶¶ 87 & 88. Despite counsel's request for a departure below the statutory

2

maximum sentence based on White's minimal role in the enterprise, the Court sentenced White to 60 months' imprisonment, the statutory maximum. Docs. 12, 16, 24; *see* 18 U.S.C. § 371.

B.  ANALYSIS

White presents three grounds for relief: (1) that his plea was neither knowingly nor voluntarily made, (2) that the plea agreement is invalid because it lacked "consideration," and (3) ineffective assistance of counsel during the plea negotiations. Doc. 20.

1.  **Knowing and Voluntary Plea**

White contends, despite his clear testimony to the contrary, that his guilty plea was not voluntarily, knowingly, or intelligently given. Doc. 20. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). At the same time, plea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("To allow indiscriminate hearings in federal postconviction proceedings . . . for federal prisoners under 28 U.S.C.

3

§ 2255 . . . would eliminate the chief virtues of the plea system -- speed, economy, and finality."). While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71-72.

As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74, 80 n. 19 (if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

White contends that his guilty plea was made unknowingly and involuntarily because (1) his attorney did not fully explain to him what a guilty plea meant, and (2) his attorney "induced [his plea] by fraud."

4

Doc. 20 at 10. His sworn testimony at the Change of Plea and Sentencing Hearings, however, directly contradicts these contentions.[2] White swore that he had spoken with his lawyer about the indictment and information, his guilty plea, and the plea agreement, and that he understood the charges against him. Doc. 23 at 13-15. He also testified that he understood he could receive a prison sentence for his part in the conspiracy up to five years' imprisonment, a fine up to $25,000, and up to three years' supervised release. *Id.* at 16-17. And he swore he understood that the role he played in the conspiracy would be included in the calculation of his sentence. *Id.* at 18. Finally, he testified that no one had predicted or guaranteed any sentence to him, nor had anyone done anything "wrong or unfair" to force him to plead guilty. *Id.* at 17-19. Based on his unambiguous and clear testimony, the Court found White understood "the substance and meaning of the charges" against

---

[2] White is reminded that those who lie to this Court are prosecuted. *Hendrix v. United States*, 2014 WL 4204927 at *1, n. 4 (S.D. Ga. Aug. 25, 2014). Lying under oath, either live or "on paper," is illegal. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002); *United States v. Dickerson*, No. CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), cited in *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009 (unpublished); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

him, "the consequences of his plea, and the facts which the Government must prove and which, by his plea of guilty, admits all the essential elements of the offense[;]" was "engaged in th[e] proceeding with intelligence and competence[;]" and had "offered his plea of guilty as a matter of his own free choice." *Id.* at 23-24.

Faced with his sworn affirmation of understanding in an otherwise thorough and wide-ranging plea colloquy, and unsworn, self-serving testimony to the opposite effect at a time when he has every incentive to embellish, *see Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014), the Court finds White's plea testimony dispositive. Movant cannot now escape his sworn testimony at the Rule 11 hearing that his plea was both knowing and voluntary to claim it was neither. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of veracity."); *accord United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n. 8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n. 4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not

6

later be heard to contend that he swore falsely."). Hence, his unintelligent plea claim fails on the merits.[3]

   2. **Plea Agreement**

Movant argues that the plea agreement, a contract between himself and the Government, fails as a contract and is "due to be voided as a matter of law." Doc. 20 at 10 (apparently contending that the contract lacks adequate consideration because his guilt is outweighed by the sentence imposed). Even assuming this claim is not procedurally defaulted, *see Bousley v. United States*, 523 U.S. 614, 621 (1998), he has received more-than adequate consideration in exchange for his guilty plea.

Pleading out resulted in a cap of 60 months' incarceration; had White been convicted as charged in the indictment, "he would have

---

[3] It's also procedurally barred. White could have, but didn't, raise his plea claim on direct appeal. *See Bousley* v. United States, 523 U.S. 614, 621 (1998) ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). And a movant may not use his collateral attack as "a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

A procedural default may be overcome if the movant can show "cause excusing his failure to raise the issue previously and prejudice from the alleged error." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Ineffective assistance of counsel (IAC) "may satisfy the cause exception to the procedural bar," though such a claim "must have merit" to qualify. *Id.* at 1344. As discussed below, however, there is no merit to his IAC claim, so that procedural bar remains fully in effect.

7

faced an advisory guideline range of imprisonment of 292 to 365 months." PSR at ¶ 87-88. Though movant does not fully appreciate the disparity between his 60-month (5-year) sentence and a probable 292-month (more than 24-year) sentence while serving five years and repaying a significant sum for what he believes to be a minimal role in the fraud, it is clear that White received the full benefit of his bargain. *See Cummings v. United States*, 2013 WL 2422889 at *8 (S.D. Ga. June 3, 2013) ("A petitioner thus fails to establish that he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible."); *Freeman v. United States*, 2011 WL 2680494 at *5 (N.D. Ga. June 10, 2011) ("All [m]ovant shows is that [he] would have preferred a more favorable plea agreement -- such a showing could be made by almost anyone who has entered a guilty plea.").

### 3. Ineffective Assistance of Counsel

Having reaped the benefit of the plea agreement to avoid a 20-plus year sentence, movant argues that he was only a small fish in the scheme and did not deserve even that lesser sentence imposed by the Court. Doc. 20 at 11-14. White faults his lawyer for (1) failing to fully

8

explain the repercussions of entering a guilty plea, including that he would be responsible for $899,971.20 in restitution, and (2) advising him to plead guilty to a conspiracy despite being innocent of anything aside from "conspiring with his Boss to commit unethical and illegal acts in an attempt to preserve his job." *Id.*

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).

As to the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

9

U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

White argues he was "induced by fraud" to plead guilty to the conspiracy, contending his attorney did not explain the "applicable law" or "consequences of the plea" to him. Doc. 20 at 3, 9, 10. But he is bound by his unambiguous testimony that he "did what the Government accuse[d] [him] of doing," was "satisfied" with counsel and the way she had represented him, fully understood the charges against him and what he was pleading guilty to, had had the charges and applicable guideline ranges fully explained to him, and that no one had pressured him or coerced him to plead guilty. Doc. 23 at 12-19; *Blackledge*, 431 U.S. at 74. For that matter, he does not even begin to articulate what, precisely, counsel said that fraudulently induced him. At best he is simply advancing "buyer's remorse" under a bogus "fraud" complaint.

For that matter, White received the best bang for his buck in the plea agreement -- had he proceeded to trial, he more than likely would have received more than the 60 months he was given pursuant to the plea agreement. *See* PSR at ¶¶ 1-23 (detailing the weight of evidence stacked against White and the victim impact his action had had). Thus, he cannot possibly demonstrate *any* prejudice suffered thanks to counsel's supposed deficiencies. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," where he would have received a better outcome); *Strickland*, 466 U.S. at 695 (predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."); *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us . . . that [defendant] would have gone to trial . . . or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). Whatever his counsel may have done to "induce" him to plead to the

11

lesser charge, movant was *well-served* by her advice to take the offered plea agreement.

At bottom, White faults his attorney for failing to better argue his minimal role in the SNAP/WIC scheme, which he believes resulted in the imposition of nearly $900,000 dollars' restitution against him. *Id.* at 14. But she did try. Doc. 12 (requesting departure below the statutory maximum sentence in recognition of his minimal role). The Court simply disagreed, applying the statutory maximum sentence (despite his extensive criminal history) in light of White's cooperation and acceptance of responsibility, and apportioning his liability for restitution according to his "level of contribution to the victim's losses." Doc. 24 at 6-9; *see* PSR at ¶¶ 1-23 (describing White's accountability of the theft of $15,939,972.26 in WIC vouchers and SNAP benefits between May 2011 and December 2012). And counsel cannot be ineffective for failing to push harder for such a departure without any basis for it. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (there is no "constitutional right to compel appointed counsel to press nonfrivolous

points").[4]

## C. CONCLUSION

Accordingly, Emory White's § 2255 motion should be **DENIED**.[5] For the reasons set forth above, it is plain that he raises no substantial claim of deprivation of a constitutional right. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). Any motion for leave to appeal *in forma pauperis* therefore is moot.

---

[4] Even if White had drummed up a cognizable ineffective assistance of counsel claim, he still would not be able to bootstrap a restitution recalculation claim into his § 2255 motion. *Mamone v. United States*, 559 F.3d 1209, 1210-11 (11th Cir. 2009) (a prisoner cannot challenge restitution in a § 2255 motion *even if* cognizable § 2255 claims seeking release from custody are also raised); *Blaik v. United States*, 161 F.3d 1341, 1342-43 (11th Cir. 1998) (a restitution reduction is an action "not authorized by the plain language of the statute" because it does not constitute a release from custody); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) ("[n]on-cognizable claims do not morph into cognizable ones by osmosis.").

[5] Because his motion is entirely without merit and his contentions are unambiguously contradicted by the record, White's request for an evidentiary hearing (doc. 20 at 15) is **DENIED**. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (a hearing is unnecessary "if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'"); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (same); *Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (where the motion "amount[ed] to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

13

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __12th__ day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA